16-2015-CA-006194-XXXX-MA

Filing # 32407297 E-Filed 09/23/2015 03:37:59 PM

IN THE CIRCUIT COURT OF THE FOURTH
JUDICIAL CIRCUIT, IN AND FOR DUVAL COUNTY,
FLORIDA

CASE NO.:

DIVISION:

THOMAS J. HARTSHORN, JR.,
an individual,

                    Plaintiff,

DATE: 10/15/15
HOUR. 11:30am
DEPU...

v.

EMERALD COAST RV CENTER, LLC, doing business as CAMPING WORLD RV SALES, a
corporation; WESTCHESTER FIRE INSURANCE COMPANY, a corporation; THOR MOTOR
COACH, INC., a corporation; LIBERTY MUTUAL INSURANCE COMPANY, a corporation; and
BANK OF THE WEST, a corporation;

                    Defendants.

---

## COMPLAINT

The Plaintiff sues the Defendants and alleges:

### GENERAL ALLEGATIONS

1.    The Plaintiff was at all times material herein:

    (A)    Florida residents, residing in Duval County, Florida;

    (B)    a "consumer", within the meaning and definition of 15 U.S.C. 2301(3); and

    (C)    a "buyer", within the meaning and definition of §672.103(1)(a), Fla. Stat.

2.    EMERALD COAST RV CENTER, LLC, a corporation (hereinafter called the "SELLER"), was
at all times material herein:

    (A)    A foreign corporation with its principal place of business at 250 Parkway Drive, Suite
160, Lincolnshire, Illinois 60069;

    (B)    A "merchant", within the meaning and definition of §§ 672.104(1) and 672.314, Fla.
Stat.;

    (C)    Engaged in the business of selling new recreational vehicles to members of the general
public, including, but not necessarily limited to selling a 2014 Windsport 34J, VIN: 1F66F5DYXE0A02631

FILED: DUVAL COUNTY, RONNIE FUSSELL, CLERK, 09/30/2015 11:45:42 AM

(hereinafter the "subject vehicle"), to the Plaintiff;

(D)     A party to (1) a written dealer sales and service contract (and any and all supplements and/or amendments thereto), (2) a written warranty contract with THOR MOTOR COACH, INC., (3) a Sales Contract and (4) a Retail Installment Contract And Security Agreement with Plaintiff, whereby the SELLER was responsible for performing  a complete pre-delivery inspection on all motor home components specified in the pre-delivery checklist forms supplied by THOR MOTOR COACH, INC. on the new THOR MOTOR COACH, INC. recreational vehicles (including, but not limited to the subject vehicle) coming into its possession for sale to members of the general public, and furnishing those completed pre-delivery inspection checklists to consumers when delivering the motor homes purchased),  and was obligated to perform the warranty repair and replacement obligations of THOR MOTOR COACH, INC. in order to make THOR MOTOR COACH, INC. recreational vehicles (including the subject vehicle) covered by such THOR MOTOR COACH, INC. warranties conform to such warranties;

(E)     Doing business as CAMPING WORLD RV, a fictitious name, in Jacksonville, Duval County, Florida;

(F)     (1)     A "supplier" within the definition and meaning of 15 U.S.C. 2301(4), of recreational vehicles, component parts of and for recreational vehicles, and recreational vehicle warranties, including, but not limited to the subject vehicle, the component parts of and for the subject vehicle, and warranties for the subject vehicle;

(2)     A "warrantor" within the meaning and definition of 15 U.S.C. 2301(5);

(3)     A "seller" within the meaning and definition of Sec. 672.103(1)(d), Fla. Stat.; and

(4)     Under the duty of "good faith", within the meaning and definition of Sec. 672.103(1)(b), Fla. Stat., meaning "honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade".

3.     THOR MOTOR COACH, INC. (hereinafter called the "MANUFACTURER"):

(A)     Manufactured and distributed into interstate commerce a New 2014 Windsport 34J, VIN: 1F66F5DYXE0A026315 (hereinafter called the "subject vehicle"), the component parts of and for the

subject vehicle, and the warranties for the subject vehicle;

      (B)    Was at all times material herein a foreign corporation with its principal place of business in Elkhart, Indiana;

      (C)    Was a party to a dealer sales and service agreement with various THOR MOTOR COACH, INC. authorized dealers and repair facilities in both the United States of America and in the State of Florida, including, but not limited to the subject SELLER, whereby such dealers, including, but not limited to the subject SELLER, were obligated to perform proper pre-delivery inspections on new THOR MOTOR COACH, INC. recreational vehicles coming into their possession for sale to the general public, and were also obligated to perform the warranty repair and replacement obligations of the MANUFACTURER in order to make the MANUFACTURER'S recreational vehicles covered under such MANUFACTURER'S warranties, conform to such warranties;

      (D)    Was at all time material herein:

      (1)    A "supplier" within the meaning and definition and meaning of 15 U.S.C. 2301(4), of recreational vehicles, component parts of and for recreational vehicles, and recreational vehicle warranties, including but not limited to the subject vehicle, the component parts of and for the subject vehicle, and warranties for the subject vehicle;

      (2)    A "warrantor" within the meaning and definition of 15 U.S.C. 2301(5);

      (3)    A "seller" within the meaning and definition of Sec. 672.103(1)(d), Fla. Stat.;

      (4)    A "merchant" within the meaning and definition of §§ 672.104(1) and 672.314, Fla. Stat., and Official Comment 2 to § 672.314, Fla. Stat. Ann.;

      (5)    Under the duty of "good faith", within the meaning and definition of Sec. 672.103(1)(b), Fla. Stat., meaning "honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade".

    4.    At all times material herein, the SELLER secured a bond, pursuant to the requirements of Chapters 319 and 320, Fla. Stat., from WESTCHESTER FIRE INSURANCE COMPANY, a corporation (hereinafter called "SELLER'S SURETY"), which bond was conditioned upon the SELLER's compliance with

the conditions of any written contract made in connection with the sale of the subject vehicle and the Seller not violating the requirements of Chapters 319 and 320, Fla. Stat., in the conduct of the business for which said SELLER was licensed; said bond coverage was for the statutory minimum proscribed amount; was in favor of any person (including the Plaintiff) who suffered any loss as a result of violation of the conditions contained in said bond; and covered the events as described herein. The Plaintiff do not presently have a copy of said bond but will supplement their Complaint by attachment of copy thereof when said bond copy is produced in response to discovery.

5.      At all times material herein, the MANUFACTURER secured a bond, pursuant to the requirements of Chapters 319 and 320, Fla. Stat., from LIBERTY MUTUAL INSURANCE COMPANY, a corporation (hereinafter called "MANUFACTURER'S SURETY"), which bond was conditioned upon the MANUFACTURER's compliance with the conditions of any written contract made in connection with the sale of the subject vehicle and the Seller not violating the requirements of Chapters 319 and 320, Fla. Stat., in the conduct of the business for which said MANUFACTURER was licensed; said bond coverage was for the statutory minimum proscribed amount; was in favor of any person (including the Plaintiff) who suffered any loss as a result of violation of the conditions contained in said bond; and covered the events as described herein. The Plaintiff do not presently have a copy of said bond but will supplement its Complaint by attachment of copy thereof when said bond copy is produced in response to discovery.

6.      (A)      On or about January 15, 2014, the Plaintiff purchased from said SELLER the subject vehicle, the component parts thereof, and warranties ("consumer product(s)" within the meaning and definition of 15 U.S.C. 2301(1) and 16 CFR 700.1(a), or any tangible property which is distributed in commerce and which is normally used for personal, family or household purposes) as evidenced by the Purchase Agreement, the Retail Installment Contract and Security Agreement, an Express Written Limited Warranty, and an Express Written Full Pre-Delivery Services Inspection Checklist Warranty.

(B)      The SELLER arranged the consumer's financing of the subject vehicle with BANK OF THE WEST (hereinafter "Financier"), a foreign corporation, and assigned a consumer credit contract, to the Financier, thereby, making the Financier, as holder, "SUBJECT TO ALL CLAIMS AND DEFENSES WHICH

THE DEBTOR [i.e., THE Plaintiff] COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES".

7.     At the time said MANUFACTURER sold the subject vehicle, and at the time said SELLER sold the subject vehicle to the Plaintiff, all of said Defendants could reasonably foresee, and/or foresaw that if they, and/or any other authorized repair facility failed to timely conform the subject vehicle to their warranty obligations, and/or did not deliver a vehicle as represented and warranted, and/or had needed repair conditions existing at the time of sale, the ultimate consumers would enforce their rights pursuant to the law for same, including giving notice of revocation of acceptance, refund, rescission, breaches of warranties, and violations of the Florida Deceptive and Unfair Trade Practices Act. When notice of revocation of acceptance, refund, rescission, and breaches of warranties, occurred, as hereinafter stated, such was even more foreseeable.

8.     After purchase, and within the warranty coverage period of the subject vehicle, the Plaintiff commenced experiencing a number of problems, as more specifically identified in a series of Work Orders, a letter authored by the Plaintiff, and Plaintiff's Counsel's Notice of Revocation.

9.     Although the SELLER and MANUFACTURER (by and through the SELLER, its authorized service agent and repair facility) were given a reasonable opportunity to inspect, repair, and cure the said problems complained about on multiple occasions, said SELLER and the MANUFACTURER failed to timely, permanently rectify the same. By reason of the same, the MANUFACTURER'S express written limited warranty has failed of its essential purpose allowing all remedies under the law [including, but not necessarily limited to the Florida Uniform Commercial Code [i.e., Chapter 672, Fla. Stat. remedies] to be available to the Plaintiff.

10.    The subject vehicle remains in disrepair, and the Manufacturer has refused the remedies sought herein and instead still requests further opportunity to attempt repairs, pursuant to correspondence, dated 9/23/15.

11.    (A)    Prior to the filing of this action, the Plaintiff has given timely notice of revocation of acceptance, refund, rescission, breaches of warranties.

         (B)    Said Defendants, after being given notice of the aforesaid, have totally and utterly failed to honor said revocation, refund, and/or rescission notice which it was their duty to honor.

12.     All conditions precedent have occurred.

## COUNT I

### (BREACH OF FLORIDA UNIFORM COMMERCIAL CODE, FLORIDA COMMON LAW, AND THE FEDERAL MAGNUSON MOSS WARRANTY ACT EXPRESS WRITTEN FULL & EXPRESS WRITTEN LIMITED WARRANTIES AND THE MAGNUSON MOSS WARRANTY ACT DUTIES AND OBLIGATIONS AGAINST THE MANUFACTURER AND MANUFACTURER'S SURETY)

13.     This is an action for damages in excess of $ 15,000.00, and forms the basis for affirmative equitable relief (i.e., rescission, revocation of acceptance, refund, and cancellation), and the Plaintiff realleges by reference and reincorporate all allegations previously alleged in paragraphs 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11 and 12 above.

14.     (A)     Pursuant to 15 U.S.C. 2301 "The term "written warranty" means any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time, or any undertaking in writing in connection with the sale by a supplier of a consumer product to refund, repair, replace, or take other remedial action with respect to such product in the event that such product fails to meet the specifications set forth in the undertaking, which written affirmation, promise, or undertaking becomes part of the basis of the bargain between a supplier and a buyer for purposes other than resale of such product";

(B)     Pursuant to Sec. 672.313, Fla. Stat., "(1) Express warranties by the seller are created as follows: (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise, (b) Any description of the goods which is made part of the basis of the bargain creates and express warranty that the goods shall conform to the description, (c) Any sample or model which is made part of the basis of the bargain creates and express warranty that the whole of the goods shall conform to the sample or model, (2) It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that the seller have a specific intention to make a warranty, but an

affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty";

(C)     The MANUFACTURER'S express written limited warranty and express written full warranty are common law warranties, and by virtue of the above, also a statutory written warranties (pursuant to 15 U.S.C. 2301) and express warranties (pursuant to § 672.313, Fla. Stat.), which warranties were all breached by the MANUFACTURER;

(D)     The manufacturer also breached its duties and obligations under the Magnuson Moss Federal Warranty Improvement Act, at 15 U.S.C. 2304(a), by imposing a limitation on the duration of any warranty on the product, excluding or limiting consequential damages for breach of warranty on the product, inconspicuously, and failing to permit the consumer (i.e., the Plaintiff) to elect either a refund or replacement without charge of such product or part(s) when the product(s) contained a defect(s) or malfunction(s) which the manufacturer had been given a reasonable number of attempts to remedy unsuccessfully.

15.     As a result, the Plaintiff has never received the use and value of a recreational vehicle as represented and warranted; the Plaintiff has had or will have to incur substitute transportation expenses and living expenses; the Plaintiff has incurred incidental and consequential damages (including but not necessarily limited to inspection costs, insurance costs, tags, registrations, lost use, etc.); the Plaintiff has lost prejudgment interest on the damages sustained; the Plaintiff has incurred attorneys fees and costs in connection with his representation; and the Plaintiff's damages and losses are continuing in nature.

WHEREFORE, the Plaintiff demands judgment for damages, costs, attorneys' fees (pursuant to 15 U.S.C. 2310(d)), and prejudgment interest against the MANUFACTURER and MANUFACTURER'S SURETY.

## COUNT II

## (BREACH OF EXPRESS ADVERTISED WARRANTY AGAINST THE MANUFACTURER)

16.     This is an action for damages in excess of $ 15,000.00, and forms the basis for affirmative equitable relief (i.e., rejection, rescission, revocation of acceptance, and refund), and the Plaintiff realleges by reference and reincorporate all allegations previously alleged in paragraphs 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, and 14 above.

17.     (A)     At all times material herein, before and at the time of the purchase, the MANUFACTURER advertised in national publications, national magazines, over national television, over the internet, in various brochures, and in the Owner's Manual the general suitability, fitness, ruggedness, and dependability of vehicles, and the component parts therein; and thus, by virtue of the same made an express advertised warranty and/or warranties.

18.     (A)     The MANUFACTURER breached its express advertised warranty and/or warranties by virtue of the facts previously alleged.

        (B)     As a result, the Plaintiff has never received the use and value of a recreational vehicle as represented and warranted; the Plaintiff has had or will have to incur substitute transportation expenses and living expenses; the Plaintiff has incurred incidental and consequential damages (including but not necessarily limited to inspection costs, insurance costs, tags, registrations, lost use, etc.); the Plaintiff has lost prejudgment interest on the damages sustained; the Plaintiff has incurred attorneys fees and costs in connection with their representation; and the Plaintiff' damages and losses are continuing in nature.

        WHEREFORE, the Plaintiff demands judgment for damages, costs, attorneys' fees (pursuant to 15 U.S.C. 2310(d)), and prejudgment interest against the MANUFACTURER.

## COUNT III

### (BREACH OF FLORIDA COMMON LAW, FLORIDA UNIFORM COMMERCIAL CODE, AND FEDERAL MAGNUSON MOSS WARRANTY ACT IMPLIED WARRANTIES AND THE MAGNUSON MOSS WARRANTY ACT DUTIES AND OBLIGATIONS AGAINST THE MANUFACTURER AND MANUFACTURER'S SURETY)

19.     This is an action for damages in excess of $ 15,000.00, and forms the basis for affirmative equitable relief (i.e., rejection, rescission, revocation of acceptance, and refund), and the Plaintiff realleges by reference and reincorporate all allegations previously alleged in paragraphs 1, 2, 3, 4, 5, 6, 7, 8, 9,10, 11, 13, 14, 16 and 17 above.

20.     (A)     By operation of both Florida common law, Manheim v. Ford Motor Company, 201 So. 2d 440, 441-42 (Fla 1967), the Florida Rules of Civil Procedure 1.900 and 1.949 (2007), the Florida Uniform

Commercial Code (by virtue of Sec. 672.314, Fla. Stat. (2007) and Official Comment 2 and Sec. 672.314, Fla. Stat. Ann. (2007)), and Federal Law (by virtue of 15 U.S.C. 2301(7) and 15 U.S.C. 2308 (a)(b)(c)), the MANUFACTURER impliedly warranted, through the course of dealing, usage of trade, or otherwise, that the good (i.e., the subject vehicle and the component parts therein) were merchantable, meaning that the subject vehicle and the component parts therein would pass without objection in the trade under the contract description, were of fair average quality within the description, were fit for its ordinary purposes, ran of even kind, quality, and quantity, were adequately packaged and labeled, and conformed to the promises and affirmations of fact;

(B)     By virtue of the failure of the essential purposes of the expressed written limited warranty of the MANUFACTURER, all remedies under law (including, but not necessarily limited to the Florida Uniform Commercial Code, Chapter 672, Fla. Stat.) are available against the MANUFACTURER [see Frank Griffin Volkswagen, Inc. v. Smith, 610 So. 2d 597 (Fla. 1st DCA 1992), cert. den., 620 So. 2d 762 (Fla. 1993); 645 So. 2d 585 (Fla. 1st DCA 1994); 690 So. 2d 1328 (Fla. 1st DCA 1997); and see Claude Nolan Cadillac, Inc. v. Griffin, 610 So. 2d 725 (Fla. 1st DCA 1992), cert. den., 621 So. 2d 432 (Fla. 1993)] including both the implied warranty of merchantability and fitness for a particular purpose; and

(C)     At all times material herein and prior to the time of the purchase, as aforesaid, the MANUFACTURER advertised in national publications, national magazines, over national television, and in various brochures the general suitability, fitness, ruggedness, and dependability of vehicles similar to the subject vehicle; and thus, by virtue of same, impliedly warranted, via its advertising disseminated directly to the public (including to the Plaintiff), that the subject vehicle was reasonably fit, fit for Plaintiff' particular purposes, and solicited purchases of its vehicles (including the subject vehicle).

21.     (A)     The MANUFACTURER breached its implied warranties by virtue of the facts previously alleged; and

(B)     The manufacturer also breached its obligations under the Magnuson Moss Federal Warranty Improvement Act, at 15 U.S.C. 2304(a), by imposing a limitation on the duration of any warranty on the product, excluding or limiting consequential damages for breach of warranty on the product conspicuously, and failing to permit the consumer (i.e., the Plaintiff) to elect either a refund or replacement without charge of

such product or part (s) when the product(s) contained a defect(s) or malfunction(s) which the manufacturer had been given a reasonable number of attempts to remedy unsuccessfully.

( C)     As a result, the Plaintiff has never received the use and value of a recreational vehicle as represented and warranted; the Plaintiff has had or will have to incur substitute transportation expenses and living expenses; the Plaintiff has incurred incidental and consequential damages (including but not necessarily limited to inspection costs, insurance costs, tags, registrations, lost use, etc.); the Plaintiff has lost prejudgment interest on the damages sustained; the Plaintiff has incurred attorneys fees and costs in connection with their representation; and the Plaintiff' damages and losses are continuing in nature.

WHEREFORE, the Plaintiff demands judgment for damages, costs, attorneys' fees (pursuant to 15 U.S.C. 2310(d)), and prejudgment interest against the MANUFACTURER and MANUFACTURER'S SURETY.

## COUNT IV

### (BREACH OF FLORIDA UNIFORM COMMERCIAL CODE, FLORIDA COMMON LAW, AND MAGNUSON MOSS FEDERAL WARRANTY ACT EXPRESS WRITTEN FULL AND EXPRESS WRITTEN LIMITED WARRANTIES, IMPLIED WARRANTIES, AND OBLIGATIONS AGAINST THE SELLER, FINANCIER, AND SELLER'S SURETY)

22.     This is an action for damages in excess of $ 15,000.00, and forms the basis for affirmative equitable relief (i.e., rejection, rescission, revocation of acceptance, and refund), and the Plaintiff realleges by reference and reincorporate all allegations previously alleged in paragraphs 1, 2, 3, 4, 5, 6, 7, 8, 9,10, 11, 12, 14 (A) and (B), and 17 above.

23.     (A)     The Seller either made or is liable by virtue of its being a warrantor, or a distributor or supplier of the manufacturer's express written limited and express written full warranties, advertising, or brochures; or alternatively, the express written full warranty was really a warranty by the Seller to the Plaintiff (as opposed to being a warranty by the Manufacturer to the Plaintiff);

(B)     By operation of both Florida common law, the Florida Uniform Commercial Code (by virtue of Sec. 672.314, Fla. Stat. and Sec. 672.315, Fla. Stat., and Federal Law (by virtue of 15 U.S.C. 2301(7) and 15 U.S.C. 2308 (a)(b)(c), the SELLER impliedly warranted that the subject vehicle was merchantable and

that is was fit for Plaintiff' particular purposes; and

(C)     In addition thereto, and by virtue of the failure of essential purpose of the sole or limited remedy (as contained in the MANUFACTURER'S written limited warranty), all remedies under the Uniform Commercial Code are available to the Plaintiff against the SELLER, the FINANCIER, and the SELLER'S SURETY, including, but not limited to breach of warranty of merchantability and breach of warranty of fitness for a particular purpose.

24.     By virtue of the above plead facts, the said implied warranties were breached.

25.     As a result, the Plaintiff has never received the use and value of a vehicle as represented and warranted; the Plaintiff has had or will have to incur substitute transportation expenses; the Plaintiff has incurred incidental and consequential damages (including but not limited to inspection costs, insurance costs, tags, registrations, lost use etc.); the Plaintiff has lost prejudgment interest on the damages sustained; the Plaintiff has incurred attorneys fees and costs in connection with their representation; and the Plaintiff' damages and losses are continuing in nature.

WHEREFORE, the Plaintiff demands judgment for damages, costs, attorneys' fees (pursuant to 15 U.S.C. 2310(d)) against the SELLER, FINANCIER, and SELLER'S SURETY.

## COUNT V

### (REFUND AND REVOCATION OF ACCEPTANCE AGAINST THE MANUFACTURER, MANUFACTURER'S SURETY, SELLER, FINANCIER, AND SELLER'S SURETY)

26.     (A)     This is an action for refund and revocation of acceptance of goods costing in excess of $15,000.00 against the MANUFACTURER, the MANUFACTURER'S SURETY, the SELLER, the FINANCIER and the SELLER's SURETY pursuant to 15 U.S.C. 2301(10)(c), 15 U.S.C. 2310(d)(1), and §672.608, Fla. Stat..

(B)     This is also an action for revocation of acceptance for goods costing in excess of $15,000.00 against the MANUFACTURER, and the MANUFACTURER'S SURETY pursuant to that authority given and stated in Claude Nolan Cadillac, Inc. v. Griffin, 610 So.2d 725 (Fla. 1st DCA 1992), cert. den., 621 So. 2d 432 (Fla. 1993).

27.   The Plaintiff realleges all allegations previously alleged in paragraphs 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 14, 15, 17, 18, 20, 21, 23, 24 and 25 above.

28.   At the time of said Notice of Revocation, the subject vehicle was in substantially the same defective condition as when it was delivered to the Plaintiff and the Plaintiff has suffered substantial impairment in value because of the aforesaid defective conditions of the subject vehicle, the breaches of warranties, the failure of consideration, and the failure of the essential purpose of the MANUFACTURER'S written limited warranty, as afore plead. At the time of sale and acceptance, the aforesaid defective conditions in the subject vehicle were both unknown to the Plaintiff and not reasonably discoverable by the Plaintiff.

29.   There is no adequate remedy at law for the Plaintiff, and legal remedy cannot cancel the aforesaid purchase agreement or warranties, and require the MANUFACTURER, the MANUFACTURER'S SURETY, the SELLER, the FINANCIER or the SELLER'S SURETY, to reimburse the Plaintiff for all of the Plaintiff' damages in connection with its purchase of the subject vehicle.

30.   As a result, the Plaintiff has failed to receive the use and value of the subject vehicle as represented and warranted; they have failed to receive reasonable diagnostic services and repairs under the warranties and obligations for repair as afore plead; they have had or will have to incur substitute transportation costs; they have incurred attorney fees and costs in connection with their representation herein; they have incurred incidental and consequential damages (including but not limited to expenses for inspection, insurance, maintenance, tags, registrations, and care for the subject vehicle, etc.); the Plaintiff has suffered losses in their own time and expenses in contacting the SELLER and MANUFACTURER in attempting to have the subject vehicle properly inspected, the problems properly diagnosed, and the problems remedied; they have lost prejudgment interest on the damages sustained; and the said damages and losses are continuing in nature.

WHEREFORE, the Plaintiff demands judgment for rejection, refund, and revocation of acceptance; with all damages, including incidental and consequential damages, costs, attorneys fees (pursuant to 15 U.S.C. 2310(d)(2)), and prejudgment interest against the MANUFACTURER, the MANUFACTURER'S SURETY, the SELLER, the FINANCIER and the SELLER'S SURETY, and further demands that the purchase agreement and warranties be canceled.

## COUNT VI

### RESCISSION AND CANCELLATION OF CONTRACTS AGAINST THE MANUFACTURER, THE MANUFACTURER'S SURETY, SELLER, FINANCIER AND SELLER'S SURETY

31.     This is an action for rescission and cancellation (pursuant to 15 U.S.C. 2310(d)(1) and Sec. 672.721, Fla. Stat.) of the purchase agreement and the warranties the made in connection with sale of goods costing in excess of $15,000.00.

32.     The Plaintiff realleges all allegations previously alleged in paragraphs 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 14, 17, 18(A), 20, 21(A) and (B), 23, 24, 28, and 29 above.

33.     At the time of the notice of rescission, the subject vehicle was in substantially the same defective condition as when it was delivered to the Plaintiff and the Plaintiff has suffered substantial impairment in value because of the aforesaid defective conditions of the subject vehicle, breaches of warranties, the failure of consideration, and the failure of the essential purposes of the MANUFACTURER'S expressed written limited warranty, as afore stated.  At the time of the purchase, the aforesaid defective conditions in the subject vehicle were both unknown to the Plaintiff and not reasonably discoverable by the Plaintiff.

34.     There is no adequate remedy at law for the Plaintiff, and legal remedy cannot cancel the aforesaid purchase agreement or warranties, and require the MANUFACTURER, the MANUFACTURER'S SURETY, the SELLER, the FINANCIER, and the SELLER'S SURETY, to reimburse the Plaintiff for all of the Plaintiff' damages in connection with their purchase of the subject vehicle.

35.     As a result, the Plaintiff has failed to receive the use and value of the subject vehicle as represented and warranted; they have failed to receive reasonable diagnostic services and repairs under the warranties and obligations for repair as afore plead; they have had to or will have to incur substitute transportation costs; they have incurred expenses for inspection, insurance, maintenance, tags, registrations, and care for the subject vehicle; the Plaintiff has suffered losses of their own time and expenses in contacting the MANUFACTURER and the SELLER in the attempts to have the subject vehicle properly inspected, diagnosed, and problems therewith remedied; they have incurred attorneys fees and costs in connection with its representation herein; they have lost prejudgment interest on the damages sustained and the said damages and

losses are continuing in nature.

WHEREFORE, the Plaintiff demands judgment for rescission and cancellation of the purchase agreement and warranties; with all damages, including incidental and consequential damages, costs, attorneys' fees (pursuant to 15 U.S.C. 2310(d)(2)), and prejudgment interest against the MANUFACTURER, the MANUFACTURER'S SURETY, the SELLER, the FINANCIER and the SELLER'S SURETY.

## COUNT VII

## VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT AGAINST THE MANUFACTURER, THE MANUFACTURER'S SURETY, SELLER, THE FINANCIER, AND THE SELLER'S SURETY

36.    Plaintiff realleges all allegations previously alleged in paragraphs 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 14, 17, 18(A) and (B), 20, 21(A) and (B), 23, 24, 28, 29, 33, and 34 above .

37.    This is an action for actual damages in excess of $15,000.00, attorneys fees and costs, declaratory judgment, and permanent injunctive relief.

38.    The Plaintiff is:

(A)    an "interested person or party" within the meaning and/or definition of Sec. 501.203(6), Fla. Stat.;

(B)    a "consumer" within the meaning and/or definition of Sec. 501.203(7), Fla. Stat.;

(C)    "anyone aggrieved" within the meaning and/or definition of Sec. 501.211(1), Fla. Stat.

39.    The sale of the subject vehicle in this cause is a "consumer transaction" within the meaning and description of the Florida Deceptive and Unfair Trade Practice Act, Sections 501.201 through 501.213, Fla. Stat.

40.    The subject transaction constitutes "trade or commerce" within the meaning and/or definition of Sec. 501.203(8), Fla. Stat.

41.    (A)    The SELLER committed unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of trade or commerce, in violation of Sec. 501.203(3), Fla. Stat., "Violation of this part" by one or more of the following:

(1)    Representing the general condition of a vehicle unless known by the dealer to be

true and supportable by material fact, in that it impliedly represented that the subject vehicle was in a merchantable condition when such was not; and/or

> (2)    Providing an implied warranty and failing to honor such warranty unless properly disclaimed, in that, it impliedly warranted that the vehicle was merchantable and/or fit for the Plaintiff' particular purposes and such was not true and/or it failed to honor such warranty and/or warranties without having properly disclaimed the same.

> (B)    The MANUFACTURER committed unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of trade or commerce, in violation of Sec. 501.203(3), Fla. Stat. , "Violation of this part" based upon (a) Any rules promulgated pursuant to the Federal Trade Commission Act, 15 U.S.C. 41 et seq., (b) The standards of unfairness and deception set forth and interpreted by the Federal Trade Commission or the federal courts, and/or (c) Any law, statute, rule, regulation, or ordinance which proscribes unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices, including but not necessarily limited to 15 U.S.C. 2303(a), 15 U.S.C. 2304(a)(1)-(4), 15 U.S.C. 2308(a)(b), 15 U.S.C. 2310(b) and (c)(2), 16 CFR 701.3, the FTC Policy Statement on Deception, Rule 2-9 of the Florida Department of Legal Affairs, and/or by one or more non-enumerated non-inclusive violations (pursuant to Mack v. Bristol-Myers Squibb Co., 673 So.2d 100, 104 Fla. 1st DCA 1996), Department of Legal Affairs v. Father and Son Moving and Storage, 643 So.2d 22 (Fla. 4th DCA 1994), rev. denied, 651 So.2d 1193 (Fla. 1995), and Rule 2-2.001 of the Department of Legal Affairs) by one or more of the following:

> (1)    Misrepresented the subject vehicle's condition as new even though it leaked like a sieve;

> (2)    Misrepresented that the limited warranty was the only warranty applicable, whereas upon reason and belief, such was untrue as a matter of both Florida Common Law, the Florida Uniform Commercial Code (Sec. 672.313, 672.314, 672.315, 672.719(b), Fla. Stat., and Federal law 15 U.S.C. 2301-2312, thereby concealing, not disclosing, and omitting the truth and also legally misrepresenting that the MANUFACTURER is not responsible for any time you lose, for any inconvenience you might by caused, for the loss of your transportation, or for my other incidental or consequential damages you may have; whereas such is

untrue, misleading, not fully informative, and contrary to law;

        (3)     By assuring, warranting, and representing that it would inspect and cure the non-conformities/defects existing in the subject vehicle if the Plaintiff submitted same to their care and custody and the care and custody of its authorized repair facilities, in that, the MANUFACTURER and its authorized repair facilities never properly inspected and cured the non-conformities/defects as assured, warranted, and promised in violation of the standards of unfairness and deception set forth and intercepted by the Federal Trade Commission in its FTC Policy Statement on Deception, (which therein enumerates "Practices that have been found misleading or deceptive in specific cases [to] include...failure to perform promised services, and failure to meet warranty obligations" as illustrative of "a representation, omission or practice that is likely to mislead the consumer") and in violation of Rule 2-9.002(3) of the Department of Legal Affairs ("Misrepresent the nature, characteristics, standard ingredients, uses, benefits, warranties, guarantees...qualities of goods or services");

        (4)     By assuring, warranting, and representing that it had inspected and cured the non-conformities/defects existing in the subject vehicle after the Plaintiff submitted the subject vehicle to its custody and control, or the custody and control of its authorized repair facilities, when the MANUFACTURER or its authorized repair facilities never properly inspected and cured the non-conformities/ defects although the MANUFACTURER and its authorized repair facilities assured, warranted, and represented that it (or they) had done so;

        (5)     By breaching its express and implied warranties, its Florida Uniform Commercial Code warranties, its Florida Uniform Commercial Code duties and obligations, its Common Law warranties, its Magnuson Moss Federal Warranty Improvement Act warranties, and its Federal Magnuson Moss Warranty Act duties and obligations (pursuant to 15 U.S.C. 2304(a), 15 U.S.C. 2306, 15 U.S.C. 2308(a),(c), and 15 U.S.C. 2310(b)) including but not limited to by failure to honor its warranties, failing to repair replace, adjust and service, repeated failure to correct defects/non-conformities, by refusing to allow the Plaintiff to revoke acceptance and or to give the Plaintiff a refund.

    42.     The actions of the SELLER and the MANUFACTURER (each of which "has violated, is violating, or is otherwise likely to violate this part," Sec. 501.211, Fla. Stat., if not permanently enjoined, will

cause irreparable harm to the Plaintiff, the consuming public, as well as to other citizens of this State if they deal with the SELLER, and the MANUFACTURER, thus justifying permanent injunctive relief (as evidenced by the Florida Legislature's having already weighed and balanced the equitable hardships, and made such determination by specific enactment of the aforesaid section, all while knowing that the courts have always possessed inherent equitable powers absent such statutory provision).

43.    As a result, the Plaintiff has failed to receive the use and value of the services and a vehicle as represented and warranted; they have failed to receive reasonable diagnostic services and repairs under the warranties and obligations for repair as afore plead; they have had to or will have to incur substitute transportation costs; they have incurred expenses for inspection, insurance, maintenance, tags, registrations, and care for the subject vehicle; the Plaintiff has suffered losses in their own time and expenses in contacting the MANUFACTURER and SELLER in the attempts to have the subject vehicle properly inspected, diagnosed, and problems therewith remedied; they have incurred attorneys fees and costs in connection with their representation herein; they have lost prejudgment interest on the damages sustained and the said damages and losses are continuing in nature.

WHEREFORE, the Plaintiff demands judgment against the SELLER the SELLER'S SURETY, the FINANCIER, the MANUFACTURER, the MANUFACTURER'S SURETY for actual damages, reasonable attorneys fees and costs (all pursuant to Sec. 501.2105 and Sec. 501.211, Fla. Stat. against the SELLER and MANUFACTURER, together with declaratory judgment and permanent injunction to prevent the SELLER and the MANUFACTURER from further violating Florida's Deceptive and Unfair Trade Practices Act (pursuant to Sec. 501.211(1), Fla. Stat., and also prejudgment interest against the SELLER, the FINANCIER, the SELLER'S SURETY, and the MANUFACTURER, and the Manufacturer's Surety and any and all other relief against said Defendants which this Court may deem necessary and proper.

## COUNT VIII

### FRAUD, MISREPRESENTATION, CONCEALMENT, OMISSION, AND MATERIAL NON-DISCLOSURE (PURSUANT TO SEC. 672.721, FLA. STAT. AND DECLARATORY JUDGMENT AGAINST SELLER, FINANCIER, THE SELLER'S SURETY, MANUFACTURER, AND THE

### MANUFACTURER'S SURETY

44.  This is an action for damages in excess of $15,000.00, pursuant to the legislatively proscribed remedy (in Sec. 672.721, Fla. Stat. for economic losses as expressly authorized and preserved by the Florida Legislature in the Florida Uniform Commercial Code, and for declaratory judgment authorized by Chapter 86, Fla. Stat., and the Plaintiff realleges and reincorporate all allegations previously alleged in paragraphs 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 14, 17, 18 (A) and (B), 20, 21 (A) and (B), 23, 24, 28, 29, and 41 above.

45.  (A)  At the time of the said misrepresentations, omissions, non-disclosures, and/or concealment, the seller:

(1)  intentionally concealed, non-disclosed, omitted or misrepresented those facts, as afore-stated, to the Plaintiff;

### OR ALTERNATIVELY

(2)  having no knowledge whether the aforesaid statements and/or representations which they made were true or false, made such statements or representations, as to their own knowledge in such absolute, unqualified, and positive terms as to imply knowledge on their parts, while at the same time concealing, non-disclosing, or omitting said material facts concerning the nature, quality, or condition of the subject vehicle;

### OR ALTERNATIVELY

(3)  From its special situation and means of knowledge and the law as the Seller being a merchant, seller and dealer in motor vehicles, it was the Seller's, duty to know the truth or falsity of the statements or representations made, or the omissions, concealment, non-disclosures by them, yet said Seller failed to exercise their duties and made such statements, representations, omissions, non-disclosures, or concealment of such material facts, all as aforesaid.

(B)  At the time of the said misrepresentations, omissions, non-disclosures, or concealment, the manufacturer:

(1)  intentionally concealed, non-disclosed, omitted or misrepresented those facts, as afore-stated, to the Plaintiff;

<u>OR ALTERNATIVELY</u>

(2)      having no knowledge whether the aforesaid statements or representations which

they made were true or false, made such statements or representations, as to their own knowledge

in such absolute, unqualified, and positive terms as to imply knowledge on their parts, while at the

same time concealing, non-disclosing, or omitting said material facts concerning the nature,

quality, and/or condition of the subject vehicle;

<u>OR ALTERNATIVELY</u>

(3)      From its special situation and means of knowledge and the law as the

Manufacturer being a merchant, seller or dealer in motor vehicles, it was the Manufacturer's, duty to know the

truth or falsity of the statements or representations made, or the omissions, concealment, or non-disclosures by

them, yet said Manufacturer failed to exercise their duties and made such representations, omissions, non-

disclosures, or concealment of such material facts, all as aforesaid.

46.      Said fraud, misrepresentation, omission, non-disclosure or concealment were made with the intent

to buttress the representations made; to deceive and mislead the Plaintiff as to the true nature, condition, quality,

status, or value of the subject vehicle and warranty or warranties; the Plaintiff considered the fraudulent,

misrepresented, omitted, non-disclosed, and concealed information important; the Plaintiff' conduct and decision

with regard to purchasing the subject vehicle, the warranty or warranties was affected thereby, in that, if they

knew the true nature, condition, quality, status, and value of the subject vehicle, warranty or warranties, they

would have chosen differently; the Plaintiff were deceived and mislead by said fraud, misrepresentation,

omissions, non-disclosure, or concealment to their detriment; the Plaintiff relied upon the same as being

complete, accurate, and fully informative, when in fact, such was not; and based upon said fraud,

misrepresentation, omissions, non-disclosure, or concealment purchased the subject vehicle, the warranty or

warranties, which in the absence of said fraud, misrepresentation, omissions, non-disclosures or concealment, the

Plaintiff would not have so done.

47.      The Defendants profited either directly or indirectly from the said fraud, misrepresentation,

omission, concealment, or non- disclosure, or sought to retain the benefits of the said fraud, misrepresentation,

omission, concealment, or non- disclosure, all while having actual knowledge of the wilful, wanton, reckless, and fraudulent misrepresentations, omissions, concealment, or non-disclosure, thereby contributing to the losses and damages suffered by the Plaintiff, who they knew or should have known relied on them.

48.     The damages alleged are economic loss type damages. The Plaintiff know that economic loss type damages may be recovered under statutory causes of action, and the economic loss rules does not apply to such legislatively created remedies. See Comptech International, Inc. v. Milam Commerce Park, Ltd., 753 So. 2d 1219 (Fla. 1999) [Sec. 553.84, Fla. Stat. - State Minimum Building Code Violation]; Delgado v. J. T. Courtesy Pontiac GMC-Truck, Inc., 693 So. 2d 602 (Fla. 2d DCA 1997) [Florida Deceptive and Unfair Trade Practices Act]; Stalling v. Kennedy Electric, Inc., 710 So. 2d 195 (Fla. 5th DCA 1998), affirmed, 753 So. 2d 1219 (Fla. 1999) [Sec. 553.84, Fla. Stat.]. However, to the Plaintiff' knowledge, no appellate court has specifically addressed the statutorily, legislatively-created remedy at Sec. 672.721, Fla. Stat. ["The remedies for material misrepresentation or fraud include all remedies available under this chapter for non-fraudulent breach"]. The remedies for non-fraudulent breach under the Florida Uniform Commercial Code are generally breach of warranty type damages (i.e., economic loss damages). See Sec. 672.714(2), Fla. Stat. The Florida Legislature has clearly stated in Sec. 671.106, Fla. Stat., that remedies are to be liberally administered, and in subsection 2 thereof "any right or obligation declared by this code is enforceable by action unless the provision declaring it specifies a different and limited effect." Based upon the legislatively-created remedy and its stated purpose by the Florida Legislature, the Plaintiff respectfully requests that this Court declare whether or not the legislatively created remedy (pursuant the proscription found in Article III, Section 1 to Constitution of the State of Florida) for fraud and material misrepresentation (Sec. 672.721, Fla. Stat.) is inferior (despite the proscriptions of Art. III, Sec. ; Art. II, Sec. 3; Art. I, Sec. 21; and Art. 5, Sec. 1 of the Constitution of the State of Florida) or superior to the judicially-legislated economic loss rule of the Florida Supreme Court. The Plaintiff are interested in their right to a remedy under 672.721, Fla. Stat., and specifically request that this Court declare whether or not that legislatively created remedy exists, and if so, is the same superior (under the Florida Constitution) to the judicially favored pleading (by the Florida Supreme Court) of the Economic Loss Rule impediment.

49.     As a result, the Plaintiff has failed to receive the use and value of a motor vehicle as warranted

and represented; they have never received the repairs for which it bargained to conform the vehicle to the representations made; they have suffered from frustration of purpose and substantial impairment in value; they have incurred incidental and consequential damages, including inspection, maintenance, insurance, tag transfer, title transfer, registration, document preparation, filing fees, taxes, costs of improvements, and/or storage charges; they have incurred attorneys fees and costs; they have incurred prejudgment interest on their damages; they have spent and loss their own time and expenses in attempting to get complete proper repair by the Seller and/or Manufacturer, all to no avail; and their damages and losses are continuing in nature.

WHEREFORE, the Plaintiff demands judgment for damages together with costs against the Seller, the Financier, the Seller's Surety, the Manufacturer, and the Manufacturer's Surety, and demand declaratory judgment as afore-stated against the Seller, the Financier, the Seller's Surety, the Manufacturer and the Manufacturer's Surety.

<u>COUNT IX</u>

<u>REPLACEMENT AGAINST SELLER, FINANCIER, SELLER'S SURETY, THE MANUFACTURER, AND THE MANUFACTURER'S SURETY</u>

50.     This is an action for replacement, pursuant to 15 U.S.C. 2301 (10) (B), of goods costing in excess of $15,000.00, and the Plaintiff reincorporates and realleges paragraphs 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 14, 17, 18 (A) and (B), 20, 21 (A) and (B), 23, 24, 28, 29, 33, 34, 41, 46 and 47 above.

51.     Pursuant to 15 U.S.C. 2301(10) and 15 U.S.C. 2310(d)(1), replacement is

(A) a legal remedy at law; or alternatively,

(B) an equitable remedy for which there is no adequate remedy at law for the Plaintiff, where legal remedy cannot require the SELLER, FINANCIER, SELLER'S SURETY, MANUFACTURER, AND MANUFACTURER'S SURETY to replace the subject vehicle.

WHEREFORE, the Plaintiff demands judgment for replacement, with all damages, including incidental and consequential damages, costs, attorneys' fees (pursuant to 15 USA 2310(d(2)), and prejudgment interest against the SELLER, the FINANCIER, the SELLER's SURETY, the MANUFACTURER, the MANUFACTURER's SURETY.

PLAINTIFF DEMANDS TRIAL BY JURY ON ALL ISSUES SO TRIABLE

s/William E. Folsom
William E. Folsom, Esquire
Fla Bar No.: 0502197
6271 St. Augustine Rd Ste 24 PMB 308
Jacksonville, Florida 32217-2525
(904) 713-5586
wefolsom@yahoo.com
Attorney for Plaintiff